# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

|  |  |
|---|---|
| ) | |
| WALTER SHORT, ON BEHALF OF HIMSELF<br>AND OTHERS SIMILARLY SITUATED | ) |
| ) | |
| PLAINTIFF, | ) |
| ) | |
| v. | ) CASE NO. 1:10CV36 |
| ) | |
| CNX GAS CORPORATION AND CONSOL<br>ENERGY INC. | ) |
| ) | |
| DEFENDANTS. | ) |
| ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO
<u>FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), 12(b)(6) and 12(b)(7)</u>**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   STATEMENT OF RELEVANT FACTS ............................................ 3

      A.    History of Gas Development Prior to the Virginia Gas and Oil Act
            of 1990 ....................................................................................... 3

      B.    The Virginia Gas and Oil Act of 1990 ....................................... 3

      C.    Virginia Gas and Oil Board, Board Regulations and Board
            Hearings ..................................................................................... 5

      D.    Three Pooling Orders are relevant to the motions to dismiss and to
            Plaintiff's allegations ................................................................ 9

            1.    May 26, 1998 Order –  Unit AA38 ................................. 10

            2.    October 2, 2001 Order – Unit BB39 .............................. 11

            3.    November 8, 2001 Order – Unit BB38 ........................... 12

      E.    CNX Gas Company's interest in CBM in the three relevant units .......... 13

            1.    Commonwealth Coal Company Lease .......................... 13

            2.    Addison Lease ................................................................ 14

III.  ARGUMENT .................................................................................... 14

      A.    Pursuant to Rule 12(b)(1), the Plaintiff lacks standing because he is
            not even a member of his alleged class ..................................... 14

            1.    Standing is the threshold question in every federal case and
                  can be raised in a Rule 12(b)(1) motion ......................... 14

            3.    Plaintiff is not a member of his own putative class, nor has
                  he suffered an injury under the allegations in the Complaint ...... 16

            4.    Plaintiff Cannot Allege Standing because the Pooling
                  Orders make clear that Pocahontas Gas Partnership (now
                  CNX Gas Company LLC) held valid CBM leases ..................... 18

      B.    Pursuant to Rule 12(b)(1), Plaintiff lacks standing because Plaintiff
            failed to exhaust his administrative remedies by choosing not to
            appeal the 1998 and 2001 Virginia Gas and Oil Board Orders
            pursuant to the Virginia Code and Administrative Process Act and
            under which all actions alleged were taken ............................... 20

            1.    Plaintiff was required to exhaust his administrative
                  remedies, which Federal courts have long held sacrosanct ......... 20

# TABLE OF CONTENTS
(continued)

Page

2.   The Virginia Gas and Oil Act reflects the General Assembly's statutory scheme requiring individuals who believe they have been aggrieved by a pooling order to appeal to the appropriate circuit court, which this Plaintiff failed to do ...................................................................... 22

3.   Plaintiff Has Failed To Exhaust All Administrative Remedies.................................................................. 23

4.   Plaintiff Has Waived His Right To Raise The Claims Made In The Complaint ....................................... 24

C.   Pursuant to Rule 12(b)(1) and Rule 12(b)(6), Plaintiff's Claims Challenging the Constitutionality of Compulsory Pooling Must Be Dismissed Because it is Well-Settled that Compulsory Pooling is Constitutional ......................................................................... 25

1.   The Virginia Gas and Oil Board has the authority to issue compulsory pooling orders ......................... 26

2.   Compulsory pooling orders issued by the Virginia Gas and Oil Board Are constitutional and do not constitute a taking....... 27

3.   The 1/8th interest royalty provision is constitutional ................. 29

D.   Plaintiff's Complaint Must Be Dismissed Because He Failed to Join Indispensible Parties................................................... 29

E.   Pursuant to Rule 12(b)(6), Plaintiff's Count I (Declaratory Judgment) and Count II (Trespass and Conversion) Must be Dismissed Under the Doctrine of Laches and Under the Statute of Limitations ........................................................ 31

1.   Plaintiff's Declaratory Judgment claim is barred by the doctrine of laches ................................................ 31

2.   Plaintiff's trespass and conversion claims also are barred, in whole or in part, by the relevant statute of limitations for injury to property ........................................ 33

F.   Plaintiff's Claims for Declaratory Relief and for Trespass and Conversion Must be Dismissed, in Whole or in Part, Because the Harrison-Wyatt Decision and the Recent Revisions to the Act do not Establish that Plaintiff Owns the CBM in Question.......................... 34

G.   Pursuant to Rule 12(b)(6), Plaintiff Has Failed to Adequately Allege a Claim for Trespass, Conversion, Breach of Implied Duties, Breach of Fiduciary Duties or an Independent Claim for Punitive Damages ................................................... 37

# TABLE OF CONTENTS
(continued)

Page

   1.   Plaintiff's trespass claim must be dismissed because plaintiff cannot show that defendants' actions are unauthorized or that Plaintiff has exclusive possession to the property in question ............................................................. 37

   2.   Plaintiff's conversion claim must be dismissed because Plaintiff cannot and has not alleged an immediate right to possess the CBM ...................................................................... 38

   3.   Plaintiff has failed to adequately allege claims for breach of implied and fiduciary duties........................................................ 39

   4.   Plaintiff's claim for punitive damages must be dismissed........... 42

IV.   CONCLUSION................................................................................. 44

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*1924 Leonard Road, L.L.C. v. Van Roekel*,
    636 S.E.2d 378 (Va. 2006)...................................................................................31

*Allaun v. Scott*,
    59 Va. Cir. 461 (2002) ......................................................................................42

*Baker v. Marcus*,
    114 S.E.2d 617 (Va. 1960)...............................................................................42

*Bd. of Supervisors v. Bd. of Zoning Appeals*,
    626 S.E.2d 374 (Va. 2006)...............................................................................24

*Bishop v. Bartlett*,
    575 F.3d 419 (4th Cir. 2009) ...........................................................................15

*Blankenship v. Manchin*,
    471 F.3d 523 (4th Cir. 2006) .............................................................................9

*Bowman v. Va. State Entomologist*,
    105 S.E. 141 ( Va. 1920).................................................................................28

*Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*,
    369 F.3d 385 (4th Cir. 2004) ...........................................................................24

*Browder v. Director, Dept. of Corrections of Illinois*,
    434 U.S. 257 (1978).........................................................................................24

*Bunger v. Rogers*,
    112 P.2d 361 (Okla. 1941)..............................................................................41

*Charles E. Brauer Co., Inc. v. NationsBank of Virginia, N.A.*,
    466 S.E.2d 382 (1996) .....................................................................................42

*Coit Independence Joint Venture v. Fed. Sav. & Loan Ins. Corp.*,
    489 U.S. 561 (1989).........................................................................................21

*Commonwealth v. County Utilities Corp.*,
    290 S.E.2d 867 (Va. 1982)...............................................................................28

*Commonwealth v. Diaz*,
    585 S.E.2d 552 (Va. 2003)...............................................................................25

*Cooper v. Horn*,
    448 S.E.2d 403 (Va. 1994)...............................................................................37

*Economopoulos v. Kolaitis*,
   528 S.E.2d 714 (Va. 2000)........................................................................................38

*Finley v. Marathon Oil Co.*,
   75 F.3d 1225 (7th Cir. 1996) ....................................................................................41

*Frank Krasner Enters. v. Montgomery County*,
   401 F.3d 230 (4th Cir. 2005) ....................................................................................15

*Glenn v. Lafon*,
   427 F. Supp. 2d 675 (W.D. Va. 2006) .......................................................................9

*Gray v. Rhoads*,
   597 S.E.2d 93 (Va. 2004).........................................................................................39

*Hall v. Virginia*,
   385 F.3d 421 (4th Cir. 2004) ......................................................................................9

*Harrison-Wyatt, LLC v. Ratliff*,
   593 S.E.2d 234 (Va. 2004)...................................................................2, 33, 35, 36

*Hunter Co. v. McHugh*,
   320 U.S. 222 (1943)................................................................................................27

*Jessee v. Horace Mann Life Ins. Co.*,
   No. 1:04CV00109, 2006 U.S. Dist. LEXIS 5822 (W.D. Va. Feb. 15, 2006).........................22

*Keel v. Group Hospitalization Med. Servs., Inc.*,
   695 F. Supp. 223 (E.D. Va. 1988) ............................................................................22

*Keystone Bitumimous Coal Ass'n v. DeBenedictis*,
   480 U.S. 470 (1987)................................................................................................28

*Long Term Care Partners, LLC v. United States*,
   516 F.3d 225 (4th Cir. 2008) ....................................................................................15

*Lucas v. S.C. Coastal Council*,
   505 U.S. 1003 (1992)..........................................................................................28, 29

*Makar v. Health Care Corp.*,
   872 F.2d 80 (4th Cir. 1989) ......................................................................................22

*Marks v. Marks*,
   548, S.E.2d 919, 925 (Va. Ct. App. 2001).................................................................24

*Miller v. Schoene*,
   276 U.S. 272 (1982)................................................................................................28

*Mirant Potomac River, LLC v. EPA*,
   577 F.3d 223 (4th Cir. 2009) ....................................................................................15

*Murphy v. Amoco Prod. Co.*,
    590 F. Supp. 455 (D.N.D. 1984) .......................................................................41

*Musser Davis Land Co. v. Union Pac. Resources*,
    201 F.3d 561 (5th Cir. 2000) ...........................................................................41

*North American Royalties, Inc. v. Corporation Comm'n of Oklahoma*,
    683 P.2d 539 (Okla. 2984) ...............................................................................27

*Pac. Legal Found. v. Goyan*,
    664 F.2d 1221 (4th Cir. 1981) .....................................................................14, 15

*Patterson v. Standard Oil & Gas Co.*,
    305 U.S. 376 (1939) .........................................................................................27

*PGI, Inc. v. Rathe Prods., Inc.*,
    576 S.E.2d 438 (Va. 2003) ...............................................................................42

*Philips v. Pitt County Mem. Hosp.*,
    572 F.3d 176 (4th Cir. 2009) .............................................................................9

*Questech, Inc. v. Hartford Acci. & Indem. Co.*,
    713 F. Supp. 956 (E.D. Va. 1989) ...................................................................22

*RMA Lumber, Inc. v. Pioneer Mach., LLC*,
    2008 WL 4693564 (W.D. Va. Oct. 24, 2008) .................................................42

*Sch. Bd. v. Caudill Rowlett Scott, Inc.*,
    379 S.E.2d 319 (Va. 1989) ...............................................................................24

*Sims v. Apfel*,
    530 U.S. 103 (2000) .........................................................................................22

*Stinnett v. Colo. Interstate Gas Co.*,
    227 F.3d 247 (5th Cir. 2000) ...........................................................................41

*Superior Oil Co. v. Foote*,
    59 So. 2d 85 (Miss. 1952) ................................................................................27

*United Leasing Corp. v. Resource Bank*,
    58 Va. Cir. 96 (2001) .......................................................................................42

*Va. Beach v. Bell*,
    498 S.E.2d 414 (Va. 1998) ...............................................................................28

*Va. Chapter, Associated Gen. Contractors, Inc. v. Kreps*,
    444 F. Supp. 1167 (W.D. Va. 1978) ...............................................................21

*Vines v. Branch*,
    418 S.E.2d 890 (Va. 1992) ...............................................................................33

*Wackenhut Applied Techs. Ctr., Inc. v. Sygnetron Protection Sys., Inc.*,
   979 F.2d 980 (4th Cir. 1992) .................................................................43

*Waechter v. Amoco Prod. Co.*,
   537 P.2d 228 (Kan. 1975) ...................................................................41

*Warth v. Seldin*,
   422 U.S. 490 (1975) .............................................................................16

*White Tail Park, Inc. v. Stroube*,
   413 F.3d 451 (4th Cir. 2005) ...............................................................15

*Woodford v. Ngo*,
   548 U.S. 81 (2006)..................................................................21, 23, 25

*Wright v. St. Charles Water Auth.*,
   59 Va. Cir. 244 (2002) .........................................................................42

*Yashenko v. Harrahs NC Casino Co., LLC*,
   446 F.3d 541 (4th Cir. 2006) ...............................................................31

## STATUTES

28 U.S.C. 2107(a) ............................................................................24

Article 3 of the Virginia Gas and Oil Act. ..............................................14, 15

Va. Code § 2.2-4000 et seq. ......................................................................6

Va. Code § 2.2-4020(C) ............................................................................8

Va. Code § 8.01-38.1 ...............................................................................43

Va. Code § 8.01-243(B) ............................................................................33

Va. Code § 8.01-361.21 ............................................................................37

Va. Code § 45.1-361.1 ......................................................................3, 4, 34

Va. Code § 45.1-361.3 ...............................................................................3

Va. Code § 45.1-361.8 ...............................................................................6

Va. Code § 45.1-361.9 ......................................................................... passim

Va. Code § 45.1-361.9(A)........................................................................8, 25

Va. Code § 45.1-361.13 .............................................................................5

Va. Code §§ 45.1-361.15(B), -361.22 ..........................................................7

Va. Code § 45.1-361.17 ...................................................................................................4

Va. Code § 45.1-361.18 ...................................................................................................4

Va. Code § 45.1-361.21 .................................................................................................34

Va. Code § 45.1-361.21.1: ............................................................................................35

Va. Code § 45.1-361.21(A)(2) .......................................................................................34

Va. Code § 45.1-361.21.c.3 ...........................................................................................37

Va. Code § 45.1-361.21(C)(7), (E) ..................................................................................7

Va. Code § 45.1-361-21(E) ................................................................................26, 34, 35

Va. Code § 45.1-361.21 and § 45.1-361.22 ..................................................................34

Va. Code § 45.1-361.22 .......................................................................................... passim

Va. Code § 45.1-361.22(4) ...............................................................................................8

Va. Code § 45.1-361.22(5) ...............................................................................................8

Va. Code § 45.1-361.22(6) ...............................................................................8, 26, 40

Va. Code § 361.15(A) ......................................................................................................6

Va. Code § 361.15(B) ......................................................................................................6

Virginia's Administrative Process Act, Va. Code § 45.1-361-19 .....................................8

## OTHER AUTHORITIES

6 Patrick H. Martin and Bruce M. Kramer, Williams & Meyers, *Oil and Gas Law*
    § 905.1 (LexisNexis Matthew Bender 2009) ..........................................................27

38 Am. Jur. 2d *Gas and Oil* § 68 ................................................................................41

Fed. R. Civ. P. 5.1 ........................................................................................................30

Rules 12(b)(1), (6) and (7) of the Federal Rules of Civil Procedure .............................1

Rule 19 of the Federal Rules of Civil Procedure ...........................................................2

House Joint Resolution No. 121 ......................................................................................3

Defendants CNX Gas Corporation ("CNX") and CONSOL Energy Inc. ("CONSOL") (collectively, "Defendants"), by and through their undersigned counsel, and pursuant to Rules 12(b)(1), (6) and (7) of the Federal Rules of Civil Procedure, hereby submit this memorandum of law in support of their Motion to Dismiss Plaintiff's Complaint.

## I.      INTRODUCTION

Plaintiff's Complaint, replete with numerous factual misstatements and legal errors, should be dismissed for numerous reasons, including the following:

- Plaintiff lacks standing because he is not a member of his own putative class and his allegations do not support an injury in fact;

- Plaintiff lacks standing because his primary claim that his gas rights were forced pooled based on coal interests only is simply wrong because the 1998 and 2001 Virginia Gas and Oil Board Orders at issue clearly establish that the gas operator pooled the coalbed methane gas ("CBM") based on its gas rights;

- Plaintiff lacks standing because he failed to exhaust his administrative remedies by choosing not to appeal the 1998 and 2001 Virginia Gas and Oil Board Orders that pooled his CBM interest, if any, pursuant to the Virginia Code and Administrative Process Act;

- Plaintiff's constitutional attack on the Virginia Gas and Oil Act's forced pooling provisions ignores settled United States Supreme Court precedent, opinions of the Virginia Attorney General from 2009 and 2010, numerous state court precedents and the foremost treatises in oil and gas law, all of which state unequivocally that compulsory pooling

statutes are constitutional and do not constitute unconstitutional takings;

- Plaintiff failed to join indispensable parties including, but not limited to, the Commonwealth of Virginia and conflicting claimants, as required by Rule 19 of the Federal Rules of Civil Procedure;

- Plaintiff's individual claims fail to state claims for which relief can be granted because:

  o  All claims asserted are time-barred by laches and/or the applicable statute of limitations;

  o  CNX Gas Company LLC, a non-party to this action, obtained the right to act as gas operator pursuant to gas and/or CBM leases and not solely based upon coal leases or coal ownership as asserted[1];

  o  *Harrison-Wyatt LLC v. Ratliff* is not determinative of Plaintiff's ownership of the CBM rights he claims;

  o  The Virginia Gas and Oil Act, and the Pooling Orders of the Gas and Oil Board establish that the gas operator's duties and do not create implied or fiduciary duties and no facts have been alleged that set forth any breach of such duties even were they to exist;

  o  No trespass or conversion can occur when the acts alleged were taken pursuant to lawful Orders of the Virginia Gas and Oil Board; and

  o  No independent cause of action for punitive damages exists in Virginia.

In short, Plaintiff's Complaint fails to set forth a single actionable claim and must be

---

[1] CNX Gas Company LLC's relationship to CNX and CONSOL is explained more fully in footnote 4.

dismissed.

## II.    STATEMENT OF RELEVANT FACTS

### A.    History of Gas Development Prior to the Virginia Gas and Oil Act of 1990.

Prior to the enactment of the Virginia Gas and Oil Act of 1990 (the "Act"), the common law provided no protection for correlative rights.[2]  Under the "rule of capture," a mineral owner had no right to complain of trespass or to be compensated for natural gas or CBM drained by another well operator.  *See generally* Virginia Department of Mines, Minerals and Energy, *Natural Gas & Surface Owner Rights in Virginia*, *available at* www.dmme.virginia.gov/DGO/GasSurfRightsFlyer.pdf.  Under the common law, there was no sharing of business benefits or risks, profits or loss or royalty income.  Whoever captured the gas took all the risks and reaped all the rewards.  Numerous barriers also existed that greatly inhibited the production of natural gas (one of Virginia's greatest natural resources) and stunted the economic impact of natural gas production in terms of thousands of uncreated jobs and prevented payment of hundreds of millions of dollars of royalties which, as a result of the Virginia Gas and Oil Act, are currently being paid to numerous Virginia gas owners.  *See* 2010 Virginia General Assembly, House Joint Resolution No. 121.

### B.    The Virginia Gas and Oil Act of 1990.

In 1990, the enactment of the Act addressed such barriers by providing for compulsory pooling to maximize the recovery of natural resources and equitable sharing of the resource by establishing units from which gas can be produced.  *See* Va. Code § 45.1-361.3.

---

[2] The term "correlative rights" is defined in the Act as "the right of each gas or oil owner having an interest in a single pool to have a fair and reasonable opportunity to obtain and produce his just and equitable share of production of the gas or oil in such pool or its equivalent without being required to drill unnecessary wells or incur other unnecessary expenses to recover or receive the gas or oil or its equivalent."  Va. Code § 45.1-361.1.

The Act was premised on protecting "correlative rights" – i.e., protection for each gas owner's interest in a single pool of gas without requiring a gas owner to drill unnecessary wells or incur other unnecessary expenses to recover or receive the gas.  *See* Va. Code § 45.1-361.1.  The Act also provided for "unitization," which refers to the designation by the Virginia Gas and Oil Board of a given unit of defined surface acreage on which a gas well can be located and drilled.  This process provides for maximum recovery of the gas while protecting the correlative rights of all parties who have been voluntarily or forced pooled.  "Field rules" designate a common basin or pool of gas to determine how the gas in the field may be produced.  *See* Va. Code § 45.1-361.1.  Field rules address such things as how far apart wells should be spaced and whether there should be any limits on the rate at which gas that can be produced.  *See* Va. Code § 45.1-361.17.  Field rules are intended to protect correlative rights and avoid or reduce the physical waste and economic waste that can result from indiscriminate drilling.

Because a gas well drains a broader area around the well, not just the tract on which it is drilled, the interests of people owning the gas in the area drained by the well must be pooled together to ensure that all of the owners are paid for the gas they own that is produced from that particular well.  This area is referred to as a "drilling unit."  *See* Va. Code § 45.1-361.1.  Some people voluntarily agree to pool their gas by selling the mineral fee to the operator or by entering into a lease, joint operating agreement or other contract with the operator of the well and other owners.  *See* Va. Code § 45.1-361.18.  However, under the Act, one owner cannot keep other owners from producing their gas within a drilling unit created by statute or by Virginia Gas and Oil Board Order by refusing to participate on any basis in the drilling unit.  State law gives the Virginia Gas and Oil Board (the "Board") the right to "force" pool all owners into a drilling unit.  *See*

4

Va. Code § 45.1-361.22.

When more than one person claims to own the CBM produced by a well, those persons are referred to as "conflicting claimants." *See id.* § 45.1-361.22. Conflicts must be resolved either through a voluntary agreement of the conflicting claimants or by a decision from a court of competent jurisdiction or arbitrator following an exhaustive inquiry into the various deeds and conveyances in the claimants' title histories. If owners cannot voluntarily agree, the gas operator – typically referred to as the unit operator - is required to petition the Board to allow the well development and to place royalty proceeds from gas sales which pertain to the conflicting claims within each unit into an escrow account. *See id.* The Board distributes the money from the escrow account when the conflicting claimants agree or there is a court order establishing who owns the gas within a particular unit. *See id.*

**C.    Virginia Gas and Oil Board, Board Regulations and Board Hearings.**

Natural gas is heavily regulated in Virginia. This regulatory oversight is principally performed by the Virginia Gas and Oil Board. Va. Code § 45.1-361.13. The Board's duties and responsibilities include the following:

1.    Foster, encourage and promote the safe and efficient exploration for and development, production and conservation of the gas and oil resources located in the Commonwealth;

2.    Administer a method of gas and oil conservation for the purpose of maximizing exploration, development, production and utilization of gas and oil resources;

3.    Administer procedures for the recognition and protection of the rights of gas or oil owners with interests in gas or oil resources contained within a pool;

4.    Promote the maximum production and recovery of coal without substantially affecting the right of a gas owner proposing a gas well to explore for and produce gas; and

5.    Hear and decide appeals of Director's decisions and orders issued under Article 3 of the Virginia Gas and Oil Act.

Va. Code § 361.15(A).  The Board has specific authority to issue rules, regulations or orders pursuant to the provisions of the Administrative Process Act (Va. Code § 2.2-4000 et seq.) in order to:

1.    Prevent waste through the design spacing, or unitization of wells, pools, or fields.

2.    Protect correlative rights.

3.    Enter spacing and pooling orders.

4.    Establish drilling units.

5.    Establish maximum allowable production rates for the prevention of waste and for the protection of correlative rights.

6.    Provide for the maximum recovery of coal.

7.    Classify pools and wells as gas, oil, gas and oil, or coalbed methane gas.

8.    Collect data, make investigations and inspections, examine property, leases, papers, books and records and require or provide for the keeping of records and the making of reports.

9.    Set application fees.

10.    Govern practices and procedures before the Board.

11.    Require additional data from parties to any hearing.

12.    Take such actions as are reasonably necessary to carry out the provisions of this chapter.

Va. Code § 361.15(B).  The Virginia General Assembly also gave the Virginia Gas and Oil Board the power to enforce its orders and regulations.  *See* Va. Code § 45.1-361.8.

The Board's regulations provide various procedures for the Board's actions, including guidelines for submissions related to Board hearings, notice requirements for Board hearings and applications for pooling conflicting CBM claims.  *See* 4 Va. Admin.

Code §§ 25-160-30, -40, -70, -80.

Under Virginia's regulatory system, landowners who own rights to and want to produce conventional gas or CBM from their property have three basic options: (1) apply for a permit to produce the natural gas themselves within the drilling unit where their property is located; (2) contract with a gas producer for the production; or (3) be "pooled" with other owners in a drilling unit pursuant to an order issued by the Gas and Oil Board on the application from another gas claimant (i.e. gas owner) in the unit. Landowners who choose to contract with a gas producer may do so through deed or lease. Alternatively, the landowners may be "forced pooled."

"Pooling" refers to a statutory framework designed to protect correlative rights and prevent waste while fostering development of the gas resource. When unresolved conflicting claims of CBM ownership exist, Virginia law requires that the Board, "upon application from any claimant," to "enter an order pooling all interests or estates in the CBM drilling unit for the development and operation thereof." Va. Code §§ 45.1-361.15(B), -361.22. Pooling may be accomplished either through voluntary agreement or through a compulsory order of the Board. 4 Va. Admin. Code § 25-160-10.

When pooling is "forced," the conflicting claimant has four options in responding to a CBM owner's application for pooling: (1) sell or lease his CBM ownership to a participating owner; (2) enter into a voluntary agreement to share in the operation of the well at a rate agreeable by the owner and operator; (3) share in the operation of the well as a non-participating operator on a carried basis after proceeds allocable to his share equal 300 or 200 percent depending on whether the tract is leased; or (4) not make an election under the pooling order and be deemed a lessor of the gas well operator under the terms of the pooling order. Va. Code § 45.1-361.21(C)(7), (E).

Any conflicting claimant for CBM who decides not to make an election under the pooling order (like the Plaintiff here) is deemed to have leased his gas interest to the CBM operator. Va. Code § 45.1-361.22(6). The CBM operator is required to deposit into the Board's escrow account one-eighth of all proceeds attributable to the conflicting CBM interest. Va. Code § 45.1-361.22(4). By statute, the escrowed amounts are disbursed when the conflicting claim is resolved. Va. Code § 45.1-361.22(5). Conflicts are not resolved by the Board, but instead, as set forth in the Act, are resolved through a voluntary agreement, through statutory arbitration or by a decision from a court of competent jurisdiction upon petition by any conflicting claimant. *Id.*

Before issuing a pooling order, the Board holds a hearing in accordance with the formal litigated issues hearing provisions of Virginia's Administrative Process Act. Va. Code § 45.1-361-19. Thus, hearings on applications to pool CBM rights are fully adversarial proceedings in which "the parties shall be entitled to be accompanied by and represented by counsel, to submit oral and documentary evidence and rebuttal proofs, to conduct such cross-examination as may elicit a full and fair disclosure of the facts, and to have the proceedings completed and a decision made with dispatch." Va. Code § 2.2-4020(C).

After the Board issues a pooling order, a party aggrieved by any such order may seek an appeal to the appropriate circuit court. Va. Code § 45.1-361.9(A). If such appeal involves a gas owner, gas operator, coal owner or coal operator, the appeal is a *de novo* proceeding. *Id.* Like other appeals of administrative decisions, appeals of pooling orders are subject to the Administrative Process Act and the related Rules of the Supreme Court of Virginia. Thus, any appeal of an administrative decision must be commenced by filing a notice of appeal within 30 days after service of the final order. Va. Sup. Ct. R. 2A:2(a).

8

D.    **Three Pooling Orders are relevant to the motions to dismiss and to Plaintiff's allegations.**

Here, Plaintiff's gas interest, if any, was forced pooled by three pooling orders (the "Pooling Orders") issued pursuant to the Board's statutory authority, each covering an 80-acre drilling unit. The three drilling units at issue are numbered AA38, BB38 and BB39 in the Oakwood Field created by the Board.  The pooling order for AA38 (the "AA38 Order") became effective on May 26, 1998 (attached as Ex. A), the pooling order for BB39 (the "BB39 Order") became effective on October 2, 2001 (attached as Ex. B) and the pooling order for BB38 (the "BB38 Order") became effective on November 8, 2001 (attached as Ex. C).[3]

The Pooling Orders identify Pocahontas Gas Partnership ("PGP") as the applicant and Unit Operator, not either of the named Defendants in this lawsuit.  *See* Ex. A, AA38 Order ¶ 7, 13, 17.1; Ex. B, BB39 Order ¶ 7, 13, 17.1; Ex. C, BB38 Order ¶ 7, 13, 17.1. The Defendants have never operated the wells at issue, nor have they forced pooled the Plaintiff.  Rather, PGP was a partnership of Consolidation Coal Company and Conoco, Inc. and a predecessor in interest to CNX Gas Company LLC, the current gas operator. *See* Ex. A, AA38 Order ¶ 17.1; Ex. B, BB39 Order ¶ 17.1; Ex. C, BB38 Order ¶ 17.1[4]

---

[3] In reviewing a Rule 12(b)(6) motion to dismiss, a court may properly take judicial notice of matters of public record, as well as documents attached to the complaint and those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.  *See Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006); *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004).  Similarly, when standing is raised as the basis for a motion to dismiss under Rule 12(b)(1), the district court may consider evidence outside the pleadings. *Bishop v. Bartlett*, 575 F.3d 419, 424 (4th Cir. 2009) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)); *Glenn v. Lafon*, 427 F. Supp. 2d 675, 677 (W.D. Va. 2006).

[4]  Consolidation Coal Company is and was a wholly-owned subsidiary of Consol Inc., which is now CONSOL Energy Inc.  *See* Decl. of CONSOL Energy Inc. & CNX Gas Corporation ¶ 7 ("CONSOL & CNX Decl.") (attached as Ex. D).  Consolidation Coal Company was a 50% partner in PGP, with Conoco Inc. being the other partner beginning in 1991. *Id.* ¶ 8.  Effective January 1, 2001, Consolidation Coal Company acquired Conoco's interest in PGP. *Id* ¶ 9.  Consolidation Coal Company owned Buchanan Production Company as of July 1993. *Id.* ¶ 10.  By way of a series of dividends and capital contributions, PGP and Buchanan Production Company were contributed to CNX Gas Company LLC. *Id.* ¶ 12.  CNX Gas Company LLC was formed as a Virginia limited liability company in June 2001, with Consolidation

### 1.    May 26, 1998 Order – Unit AA38

In February 1998, PGP submitted an application for a pooling order pursuant to Va. Code § 45.1-361.22 to the Virginia Gas and Oil Board regarding an 80-acre drilling unit labeled AA38. *See* Mar. 24, 1998 Hearing Tr. at 90-92, *available at* www.dmme.virginia.gov/DGO/Board/1998Transcripts/03-24-98.pdf. Along with its application, PGP mailed by certified mail to all interested parties a "Notice of Hearing" indicating that the Board would hear PGP's application on March 24, 1998, in Abingdon, Virginia. *Id.* at 92-93. Indeed, the hearing took place on that date, and Plaintiff appeared to be heard. *Id.* at 90-91.

Among the exhibits PGP submitted to the Board was an "Exhibit A," which identified the tracts that would be subject to the pooling order. Ex. A, AA38 Order, Book 476, Page 825.[5] PGP also submitted exhibits identifying all of the affected tracts, including the status of the coal, surface, oil, and gas rights of each interested party. *Id.*, Book 476, Pages 826-29. These exhibits noted that PGP had the rights, by CBM leases from gas owners, to 93.7875% of the CBM interest in Unit AA38. *See id.*, Book 476, Pages 826-27; *see also id.* ¶ 17.3. Plaintiff and his relatives had claims to 4.1% of the CBM interest, and Robert Rose had claims to the remaining 2.1125%. *See id.*, Book 476, Pages 826-29.

Following the March 24, 1998 hearing, the Board issued a pooling order regarding Unit AA38. Ex. A, AA38 Order. The AA38 Order recognized PGP's claim to 93.7875% of the CBM rights in Unit AA38, ordered the interests of all the conflicting

---

Coal Company being its sole member. *Id.* ¶ 11. Effective April 1, 2003, Buchanan Production Company and PGP were merged into CNX Gas Company LLC. *Id.* ¶ 13. CNX Gas Corporation was incorporated June 30, 2005. *Id.* ¶ 14. CNX Gas Corporation currently is the sole member of CNX Gas Company LLC. *Id.* ¶ 15. CONSOL Energy Inc. owns 100% of CNX Gas Corporation. *Id.* ¶ 16.

[5] Citations to specific paragraphs of the Pooling Orders at issue are done using the following convention: [AA28/BB38/BB39] Order ¶ ___. Citations to Exhibits attached to these Orders, which do not contain paragraph numbers, are as follows: [AA28/BB38/BB39] Order, Book ___, Page(s) ___.

claimants be pooled, and determined that PGP would be the operator "authorized to drill and operate" the CBM wells in AA38. *Id.* ¶¶ 13, 17.3, 20. The AA38 Order also expressly stated that it was effective on the date of its execution, May 26, 1998, and that "[a]ppeals of this Order are governed by the provisions of Va. Code § 45.1-361.9 which provides that any order or decision of the Board may be appealed to the appropriate circuit court." *Id.* ¶¶ 21-22.

    Plaintiff did not appeal the Board's pooling order on Unit AA38.

### 2.    October 2, 2001 Order – Unit BB39

    In June 2001, PGP submitted an application for a pooling order pursuant to Va. Code § 45.1-361.22 to the Virginia Gas and Oil Board regarding an 80-acre drilling unit labeled BB39. July 17, 2001 Hearing Tr. at 37-38, *available at* www.dmme.virginia.gov/ DGO/Board/2001Transcripts/07-17-01.pdf. Along with its application, PGP mailed by certified mail to all interested parties a "Notice of Hearing" indicating that the Board would hear PGP's application on July 17, 2001, in Abingdon, Virginia. *See id.* at 39-41. Indeed, the hearing took place on that date, and Plaintiff appeared to be heard. *Id.* at 37.

    Among the exhibits PGP submitted to the Board was an "Exhibit A," which identified the tracts that would be subject to the pooling order. Ex. B, BB39 Order, Book 534, Page 309. PGP also submitted exhibits identifying all of the affected tracts, including the status of the coal, surface, oil and gas rights of each interested party. *Id.*, Book 534, Pages 310-12. These exhibits noted that PGP had the rights, by CBM lease from gas owners to 94.85% of the CBM interest in Unit BB39. *See id.*, Book 534, Page 310; *see also id.* ¶ 17.3. Plaintiff and his relatives had claims to the remaining 5.15% of the CBM interest in that unit. *See id.*, Book 534, Pages 310-12.

    Following the July 17, 2001 hearing, the Board issued a pooling order regarding

Unit BB39.  Ex. B, BB39 Order.  The BB39 Order recognized PGP's claim to 94.85% of the CBM rights in Unit BB39, ordered the interests of the conflicting claimants be pooled and determined that PGP would be the operator "authorized to drill and operate" the CBM wells in unit BB39.  *Id.* ¶¶ 13, 17.3, 20.  The BB39 Order also expressly stated that it was effective on the date of its execution, October 2, 2001, and that "[a]ppeals of this Order are governed by the provisions of Va. Code Ann. § 45.1-361.9 which provides that any order or decision of the Board may be appealed to the appropriate circuit court."  *Id.* ¶¶ 21-22.

Plaintiff did not appeal the Board's pooling order on Unit BB39.

### 3.    November 8, 2001 Order – Unit BB38

Simultaneously with its application for an order pooling CBM interests in BB38, PGP submitted an application for a pooling order pursuant to Va. Code § 45.1-361.22 to the Virginia Gas and Oil Board regarding an 80-acre drilling unit labeled BB38.  July 17, 2001 Hearing Tr. at 37-38, *available at* www.dmme.virginia.gov/DGO/Board/2001 Transcripts/07-17-01.pdf.  Again, PGP sent by certified mail to all interested parties a "Notice of Hearing" indicating that the Board would hear PGP's application on July 17, 2001, in Abingdon, Virginia.  *See id.* at 39-41.  The application for BB38 was heard simultaneously on July 17, 2001, with the application for BB39.  *Id.* at 37.

Among the exhibits PGP submitted to the Board was an "Exhibit A," which identified the tracts that would be subject to the pooling order.  Ex. C, BB38 Order, Book 534, Page 255.  PGP also submitted exhibits identifying all of the affected tracts, including the status of the coal, surface, oil and gas rights of each interested party.  *Id.*, Book 534, Pages 256-70.  These exhibits noted that PGP had the rights, by CBM leases from gas owners, to 38.7375% of the CBM interest in Unit BB38.  *See id.*, Book 534,

Pages 256-57; *see also id.* ¶ 17.3.  Plaintiff and others had claims to the remaining

61.2625% of the CBM interest within that unit.  *See id.*, Book 534, Pages 258-70.

Following the July 17, 2001 hearing, the Board issued a pooling order regarding

Unit BB38.  Ex. C, BB38 Order.  The BB38 Order recognized PGP's claim to 38.7375%

of the CBM rights in Unit BB38, ordered the interests of the conflicting claimants be

pooled and determined that PGP would be the operator "authorized to drill and operate"

the CBM  wells in BB38.  *Id.* ¶¶ 13, 17.3, 20.  The BB38 Order also expressly stated that

it was effective on the date of its execution, November 8, 2001, and that "[a]ppeals of this

Order are governed by the provisions of Va. Code Ann. § 45.1-361.9 which provides that

any order or decision of the Board may be appealed to the appropriate circuit court."  *Id.*

¶¶ 21-22.

Plaintiff did not appeal the Board's pooling order on Unit BB38.

**E.      CNX Gas Company's interest in CBM in the three relevant units.**

The CBM rights of PGP and its successor in interest in the three Pooling Orders

come from two CBM gas leases – one from Commonwealth Coal Company to PGP and

one from Addison to PGP.  Each of these lessors owns an interest in the CBM gas within

the units at issue.

### 1.      Commonwealth Coal Company Lease

The Pooling Orders for AA38, BB38 and BB39 reflect the fact that PGP's CBM

interests are based on a CBM lease for the following tracts[6]:

- May & Painter, also known as Commonwealth Coal tract 009, a fee tract;
- John D. Perry, also known as Commonwealth Coal tract 002, a fee tract;
- T.D. Chambers, also known as Commonwealth Coal tract 005, a coal and gas tract; and
- T. Short, also known as Commonwealth Coal tract 012, a coal, oil and gas tract.

---

[6] By lease dated June 23, 1997, Commonwealth Coal transferred to PGP its CBM interests in approximately 4,510.042 acres of land in Buchanan and Tazewell Counties, Virginia.

13

*See* Ex. A, AA38 Order, Book 476, Pages 826-27; Ex. C, BB38 Order, Book 534, Pages 256-57; Ex. B, BB39 Order, Book 534, Page 310.[7]

For all of the tracts described above, the three Pooling Orders each identify Commonwealth Coal as having the fee interest or some lesser interest that includes the gas rights in these tracts in each drilling unit. *See id.*

### 2.    Addison Lease

The Pooling Order for AA38 reflects a small percentage of PGP's CBM interest leased from Addison.[8]  Ms. Addison owned the surface, oil and gas rights of the relevant tract, and transferred the CBM interests to PGP.  Ex. A, AA38 Order, Book 476, Page 826.  As the AA38 Pooling Order notes, this interest reflects only 0.1125% of the CBM rights pooled in Unit AA38.  *Id.*

## III.    ARGUMENT

### A.    Pursuant to Rule 12(b)(1), the Plaintiff lacks standing because he is not even a member of his alleged class.

#### 1.    Standing is the threshold question in every federal case and can be raised in a Rule 12(b)(1) motion.

The existence of standing under Article III of the U.S. Constitution is "'the threshold question in every federal case, determining the power of the court to entertain the suit.'"  *Pac. Legal Found. v. Goyan*, 664 F.2d 1221, 1224 (4th Cir. 1981) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  The "question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial

---

[7] Indeed, all of these tracts are explicitly referenced in the Commonwealth Coal Lease.  Defendants note that the coal, oil and gas tract referenced in the BB38 and BB39 Pooling Orders as "N. Short" is mislabeled.  It actually is the T. Short coal, oil and gas tract, also known as Commonwealth Coal tract 012.

[8] By lease dated May 2, 1997, Addison transferred to PGP her CBM interests in approximately 37 acres of land in Buchanan County, Virginia.

powers on his behalf." *Id.*; *see also Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 231 (4th Cir. 2008) ("'The standing requirement is designed to guarantee that the plaintiff has a sufficient personal stake in the outcome of a dispute to render judicial resolution of it appropriate.'") (quoting *Emery v. Roanoke City Sch. Bd.*, 432 F.3d 294, 298 (4th Cir. 2005)).  As the party invoking this Court's subject matter jurisdiction, Plaintiff has the burden to establish standing.  *Frank Krasner Enters. v. Montgomery County*, 401 F.3d 230, 234 (4th Cir. 2005).

Challenges to standing may properly be brought under Rule 12(b)(1).  *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005).  Even at the pleading stage, "the party invoking the jurisdiction of the court must include the necessary factual allegations in the pleading, or else the case must be dismissed for lack of standing." *Bishop v. Bartlett*, 575 F.3d 419, 424 (4th Cir. 2009).

### 2. Standing analysis is based on three elements that require a plaintiff to be a member of his own class.

To satisfy Article III standing, "the party invoking federal court jurisdiction must show that (1) it has suffered an injury in fact, (2) the injury is fairly traceable to the defendants' actions, and (3) it is likely, and not merely speculative, that the injury will be redressed by a favorable decision."  *Long Term Care Partners*, 516 F.3d at 230-31 (4th Cir. 2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  The first element requires that Plaintiff demonstrate "an 'injury in fact' that is concrete and particularized, and actual or imminent, as opposed to conjectural or hypothetical." *Id.* at 231.  To meet the causation and redressability requirements, the alleged injury "must result from the actions of the respondent, not from the actions of a third party beyond the Court's control."  *Mirant Potomac River, LLC v. EPA*, 577 F.3d 223, 226 (4th Cir. 2009).

15

> **3.    Plaintiff is not a member of his own putative class, nor has he suffered an injury under the allegations in the Complaint.**

"Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.  Unless these petitioners can thus demonstrate the requisite case or controversy between themselves personally and respondents, 'none may seek relief on behalf of himself or any other member of the class.'"  *Warth v. Seldin*, 422 U.S. 490, 502 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).  Plaintiff's allegations fall short of this pleading requirement and, in fact, do not establish him as a member of his proposed class.

Specifically, Plaintiff alleges:

(1)    Plaintiff and putative class members "sold, conveyed, or leased their coal rights to CONSOL Energy, Inc.," but not their rights to any coalbed methane gas that might be located on their land; and

(2)    CONSOL thereafter produced coalbed methane gas from the land owned by Plaintiff and putative class members, and falsely claimed that CONSOL owned the coalbed methane gas through the coal rights Plaintiff and putative class members had transferred to CONSOL.

(Compl. ¶¶ 1, 2, 24, 26).  The putative class is further defined as follows:

Each Landowner who has conveyed (or whose predecessor-in-title conveyed) the ownership of the coal in and under his/her Land to CONSOL Energy Inc. under a severance deed or other instrument that conveys coal only, and not the Landowner's gas estate/rights; and each Landowner who has entered (or whose predecessor-in-title entered) a coal lease which authorizes CONSOL Energy Inc. to produce and sell the coal in and under his/her Land but which does not lease the Landowner's gas estate/rights to CONSOL Energy Inc.   The Class excludes (a) the Defendants, and (b) any person who serves as a judge in this civil action and his/her spouse.

(Compl. ¶ 35).  Plaintiff's class definition therefore depends on a member having "conveyed . . . the ownership of the coal in and under his/her Land to CONSOL Energy

16

Inc." or having "entered . . . a coal lease which authorizes CONSOL Energy Inc. to produce and sell the coal in and under his/her Land." However, Plaintiff has not conveyed the coal to CONSOL by deed or lease. *See* Ex. D, CONSOL & CNX Decl. ¶¶ 5-6. Therefore, Plaintiff is not a member of the class for which he purports to be an adequate representative. (*Contra* Compl. ¶ 43).

Even more telling, a review of the AA38, BB38 and BB39 Pooling Orders underscores that the production of gas under this Plaintiff's land is pursuant to a Board Order and through gas rights secured by PGP separate and apart from coal sold or leased. *See* Ex. A, AA38 Order; Ex. B, BB39 Order; Ex. C, BB38 Order.

To have standing to recover on the claims alleged in his Complaint, Plaintiff must have "sold, conveyed, or leased [his] coal rights to CONSOL Energy, Inc.," but "neither conveyed [his] [CBM] nor leased [his] [CBM] production rights to Defendants." (Compl. ¶ 1). Plaintiff nowhere alleges, however, when, how, to what extent or even if he transferred his coal rights to CONSOL. In fact, Plaintiff not conveyed any coal interests to CONSOL by deed or lease. *See* Ex. D, CONSOL & CNX Decl.¶ 5. At most, Plaintiff notes that he is a landowner who hypothetically could transfer coal, gas and/or mineral rights to CONSOL. (Compl. ¶ 25 ("When a landowner (*such as Plaintiff* and the Class Members) conveys the ownership of coal in, upon and underlying his/her land to a third party (such as CONSOL), title to the CBM in, upon and underlying his/her land does not pass to the third party along with the coal, and the coal owner has no right or authority to produce the CBM.") (emphasis added)). This vague allegation is not sufficient to meet Plaintiff's burden of establishing an "injury in fact." Plaintiff simply has not alleged that he is part of the class of aggrieved persons on which the Complaint is based.

17

Thus, the Complaint should be dismissed because Plaintiff has not satisfied any of the three requirements for pleading standing.  He has not alleged an actual "injury in fact" and, therefore, he also has failed to allege causation and redressability of an "injury in fact."

> **4.      Plaintiff Cannot Allege Standing because the Pooling Orders make clear that Pocahontas Gas Partnership (now CNX Gas Company LLC) held valid CBM leases.**

Plaintiff's Complaint should be dismissed with prejudice because the Board's Pooling Orders at issue here demonstrate that they are not based on Plaintiff having "sold, conveyed, or leased [his] coal rights to CONSOL," (Compl. ¶ 1), and that the CBM rights of PGP subject to those Pooling Orders were based on leases covering those CBM rights.  The three Pooling Orders at issue state that when Plaintiff's potential CBM rights became pooled, all of the CBM to which PGP claimed an interest had been obtained via CBM leases from Commonwealth Coal Corporation or Addison.[9]  *See* Ex. A, AA38 Order, Book 476, Pages 826-27; Ex. B, BB39 Order, Book 534, Page 310; Ex. C, BB38 Order, Book 534, Pages 256-57.  Because these lessors owned CBM rights in these units, PGP's interest derived from those CBM rights.  Contrary to Plaintiff's assertions, none of these Pooling Orders were issued based on a claim by PGP to CBM that derived from coal interests only that had been transferred to it.  The Pooling Orders were issued because PGP had large percentages of CBM under lease from CBM owners in each drilling unit.  The Pooling Orders correctly identify PGP's claims to the CBM covered in those administrative rulings.

---

[9] Again, PGP is not a defendant in this lawsuit.  PGP is the predecessor to CNX Gas Company, LLC, which is also not a defendant.

The first pooling order was issued on May 26, 1998, over twelve years ago.[10]   In it, the Board notes that the applicant, PGP, claimed 93.7875% interest in the CBM in the 80 acres at issue and that interest came from **fee owners** and **gas owners**.  *See* Ex. A, AA38 Order ¶ 17.3; *see also id.*, Book 476, Pages 826-27.  The pooling order also includes an exhibit titled, "Pocahontas Gas Partnership, Unit AA-38, Tract Identification."  *See id.*, Book 476, Pages 826-27.  The Tract Identification exhibit confirms the Board's conclusion, as it lists PGP as the holder of leases on 93.7875% of the CBM rights subject to the May 26, 1998 pooling order, and that Commonwealth Coal, not Plaintiff, owned 100% of the coal rights at issue.  *See id.*[11]

The second pooling order was issued on October 2, 2001, almost nine years ago.  There, the Board notes that PGP claimed 94.85% interest in the CBM in the 80 acres at issue from **fee owners** and **gas owners**.  *See* Ex. B, BB39 Order ¶ 17.3; *see also id.*, Book 534, Page 310.  The October 2, 2001 pooling order also contained an exhibit titled, "Pocahontas Gas Partnership, Unit BB-39, Tract Identifications."  *See id.*, BB39 Order, Book 534, Page 310.  That Tract Identification exhibit confirmed that PGP held leases on 94.85% of the CBM rights subject to the October 2, 2001 pooling order, and that Commonwealth Coal, not Plaintiff, owned 100% of the coal rights at issue.  *See id.*

The third pooling order was issued on November 8, 2001, again almost nine years ago.  There, the Board notes that PGP claimed 38.7375% interest in the CBM in the 80 acres at issue from **fee owners** and **gas owners**.  *See* Ex. C, BB38 Order ¶ 17.3; *see also*

---

[10]All three Pooling Orders identify as a conflicting claimant "Tom Short Heirs, Devisees, Successors or Assigns."  *See* Ex. A, AA38 Order, Book 476, Page 826-29; Ex. B, BB39 Order, Book 534, Page 310; Ex. C, BB38 Order, Book 534, Page 256-57.  Plaintiff is one of Mr. Short's heirs, devisees, successors, or assigns.  *See* Ex. B, BB39 Order, Book 534, Page 31; Ex. C, BB38 Order, Book 534, Page 258.
[11]The Pooling Orders cover "all coal seams below the Tiller Seam, including the Upper Seaboard, Greasy Creek, Middle Seaboard, Lower Seaboard, Upper Horsepen, Middle Horsepen, War Creek, Lower Horsepen, Pocahontas No. 9, Pocahontas No. 8, Pocahontas No. 7, Pocahontas No. 6, Pocahontas No. 5, Pocahontas No. 4, Pocahontas No. 3, and Pocahontas No. 2."  *See* Ex. A, AA38 Order ¶ 3; Ex. B, BB39 Order ¶ 3; Ex. C, BB38 Order ¶ 3.

*id.*, Book 534, Pages 256-57.  The November 8, 2001 pooling order also contained an exhibit titled, "Pocahontas Gas Partnership, Unit BB-38, Tract Identifications."  *See id.*, Book 534, Page 256.  That Tract Identification exhibit confirmed that PGP held leases on 38.7375% of the CBM rights subject to the November 8, 2001 pooling order, and that Commonwealth Coal, not Plaintiff, owned 100% of the coal rights at issue.  *See id.*

The foregoing is dispositive on the standing issue because all of Plaintiff's claims flow from the flawed premise that he transferred his coal rights to CONSOL, that CONSOL made such a claim to the CBM before the Board based upon that transfer of coal rights, and that CONSOL, in turn, unlawfully extracted Plaintiff's CBM based solely on the coal rights CONSOL had obtained.  Whomever Plaintiff transferred his coal rights to (if he ever owned such rights or ever made such a transfer), it was neither CONSOL nor CNX, and this demonstrates that Plaintiff is not and cannot be a member of the putative class.  Further, PGP's (now CNX Gas Company LLC's) CBM rights were properly transferred by fee or gas owners and PGP operated under valid Pooling Orders issued by the statutorily empowered Virginia Gas and Oil Board.

**B.      Pursuant to Rule 12(b)(1), Plaintiff lacks standing because Plaintiff failed to exhaust his administrative remedies by choosing not to appeal the 1998 and 2001 Virginia Gas and Oil Board Orders pursuant to the Virginia Code and Administrative Process Act and under which all actions alleged were taken.**

The Boards' three Pooling Orders that Plaintiff asks this Court to overturn were entered in 1998 and 2001, and Plaintiff failed to appeal those Orders.  In addition to being time-barred, Plaintiff does not have standing in this Court to attack a Virginia Administrative Order when a process of appeal existed and of which Plaintiff did not avail himself.

**1.      Plaintiff was required to exhaust his administrative remedies, which Federal courts have long held sacrosanct.**

Federal courts, including the Western District of Virginia, have recognized that "[t]he doctrine of exhaustion of administrative remedies is well established in the area of administrative law.  This doctrine provides 'that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'"  *Va. Chapter, Associated Gen. Contractors, Inc. v. Kreps*, 444 F. Supp. 1167, 1179 (W.D. Va. 1978) (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938)).  The exhaustion doctrine serves two primary purposes:  (1) protection of administrative agency authority and (2) promotion of efficiency.  *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).

Compliance with the exhaustion doctrine means *actual* compliance with all of the applicable rules, deadlines and procedures of an administrative agency.  In other words, the law requires "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'"  *Woodford*, 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).  Thus, courts outside of a particular administrative process "'should not topple over administrative decisions unless the administrative body not only has erred, *but has erred against objection made at the time appropriate under its practice*.'"  *Id.* (quoting *United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) (emphasis in original).

The policy underlying the exhaustion doctrine is so important that the doctrine can apply even if the relevant administrative statutory/regulatory scheme does not mandate exhaustion of administrative remedies.  *See, e.g.*, *Coit Independence Joint Venture v. Fed. Sav. & Loan Ins. Corp.*, 489 U.S. 561, 579-80 (1989) ("Where a statutory requirement of exhaustion is not explicit, 'courts are guided by congressional intent in

21

determining whether application of the doctrine would be consistent with the statutory scheme.'") (quoting *Patsy v. Fla. Bd. of Regents*, 457 U.S. 496, 502 & n.4 (1982)); *Makar v. Health Care Corp.*, 872 F.2d 80, 82 (4th Cir. 1989); *Jessee v. Horace Mann Life Ins. Co.*, No. 1:04CV00109, 2006 U.S. Dist. LEXIS 5822, at *12-13 (W.D. Va. Feb. 15, 2006); *Questech, Inc. v. Hartford Acci. & Indem. Co.*, 713 F. Supp. 956, 962 n.14 (E.D. Va. 1989); *Keel v. Group Hospitalization Med. Servs., Inc.*, 695 F. Supp. 223, 227-28 (E.D. Va. 1988). The U.S. Supreme Court has recognized that requiring exhaustion when not mandated by statute is an appropriate exercise of discretion because it is "'desirable that parties should have an opportunity to offer evidence on the general issues involved in the less formal proceedings before administrative agencies entrusted with the responsibility of fact finding.'" *Sims v. Apfel*, 530 U.S. 103, 109 (2000) (quoting *Hormel v. Helvering*, 312 U.S. 552, 556 (1941)). Indeed, "courts require administrative issue exhaustion 'as a general rule' because it is usually 'appropriate under an agency's practice' for 'contestants in an adversary proceeding' before it to develop fully all issues there." *Id.* (quoting *L. A. Tucker*, 344 U.S. at 36-37); *see also Makar*, 872 F.2d at 83 (noting that it would be "anomalous" if courts did not "see that [administrative] remedies are regularly utilized"). And "[w]here the parties are expected to develop the issues in an adversarial administrative proceeding, . . . the rationale for requiring issue exhaustion is at its greatest." *Id.* at 110.

> **2.** **The Virginia Gas and Oil Act reflects the General Assembly's statutory scheme requiring individuals who believe they have been aggrieved by a pooling order to appeal to the appropriate circuit court, which this Plaintiff failed to do.**

The Virginia statutes at issue evince a legislative intent to accord the Board broad powers in managing the exploration, development, production and conservation of Virginia's gas and oil resources. One way the Board carries out its legislative mandate is

by issuing pooling orders pursuant to Va. Code § 45.1-361.22 for CBM wells, which is the administrative action Plaintiff now attacks. Appeals of the Board's Pooling Orders must be taken, however, in accordance with Va. Code § 45.1-361.9, which provides, "[a]ny order or decision of the Board may be appealed to the appropriate circuit court." *See also* Ex. A, AA38 Order ¶ 21; Ex. B, BB39 Order ¶ 21; Ex. C, BB38 Order ¶ 21. And in circumstances like this case, where a gas owner or gas operator would be a party in the appeal, the circuit court would conduct an adversarial *de novo* proceeding. Va. Code § 45.1-361.9. The relevant statutes therefore create a comprehensive administrative scheme, including the right to an appeal *de novo* by a court independent from the Board. Under these facts, the Court can and should apply the exhaustion doctrine. This is particularly true because, as explained below, Plaintiff has slept on his rights and would be barred from asserting his claims in the appropriate forum.

### 3.    Plaintiff Has Failed To Exhaust All Administrative Remedies.

Plaintiff challenges the statutes governing the Board and its authority to enter Pooling Orders for CBM and, therefore, the three Pooling Orders at issue. *See* Ex. A, AA38 Order; Ex. B, BB39 Order; Ex. C, BB38 Order. As noted above, the Virginia General Assembly, consistent with other administrative schemes, legislated the process for appeals from the Board's Pooling Orders. Va. Code § 45.1-361.9; s*ee also* Ex. A, AA38 Order ¶ 21; Ex. B, BB39 Order ¶ 21; Ex. C, BB38 Order ¶ 21. Plaintiff never filed a notice of appeal to any circuit court following the entry of the Pooling Orders at issue. Thus, Plaintiff has not exhausted all administrative remedies available to him, and he should be procedurally barred from raising claims in this Court that he should have brought before a circuit court years ago. *See Woodford*, 548 U.S. at 90.

The Plaintiff should not be able to attack the Act and the Board outside the

statutory mechanisms established by the Virginia General Assembly. Moreover, the Plaintiff should not be able to bring his claims more than eight years and twelve years subsequent to the entry of the respective Pooling Orders.

### 4. Plaintiff Has Waived His Right To Raise The Claims Made In The Complaint.

Because Plaintiff decided not to appeal the Board's Pooling Orders to the circuit court pursuant to Va. Code § 45.1-361.9, it is too late for him to assert his challenges to them in *any* forum. Any appeal from the Board's Pooling Orders would have been an appeal from an administrative action. Accordingly, Supreme Court of Virginia Rule 2A:2 would control, requiring that Plaintiff commence his appeal within 30 days after the effective date of the Pooling Orders. By not timely filing a notice of appeal, Plaintiff has waived his right to challenge the Pooling Orders. *Bd. of Supervisors v. Bd. of Zoning Appeals*, 626 S.E.2d 374, 380-81 (Va. 2006) (holding that 30-day period to file notice of appeal under Rule 2A:2 "is jurisdictional").

Courts from the United States Supreme Court, to the Court of Appeals for the Fourth Circuit, to each of our appellate courts in Virginia have strictly enforced strictly the time limits for filing appeals. *See, e.g., Browder v. Dir., Dept. of Corr. of Ill.*, 434 U.S. 257, 264 (1978) ("Under Fed.Rule App.Proc. 4(a) and 28 U.S.C. § 2107, a notice of appeal in a civil case must be filed within 30 days of entry of the judgment or order from which the appeal is taken. This 30-day time limit is 'mandatory and jurisdictional.'") (citation omitted); *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 393 (4th Cir. 2004) (observing that 28 U.S.C. 2107(a) "sets jurisdictional time limits for filing notices of appeal"); *Sch. Bd. v. Caudill Rowlett Scott, Inc.*, 379 S.E.2d 319, 323 (Va. 1989) (finding the thirty-day window of time within which appeals must be filed as mandatory and jurisdictional, and not merely directory); *Marks v. Marks*, 548, S.E.2d

919, 925 (Va. Ct. App. 2001) (holding that petitioner's application for post-award relief was not timely where petitioner did not file proper pleadings in trial court within time permitted by statute).  Having failed to avail himself of the statutory appellate process afforded to him within the statutory time limit for so doing, Plaintiff simply may not pursue the current action.

To the extent Plaintiff responds that an appeal to the circuit court would not have addressed all of the issues he now raises, he is wrong.  Any appeal under the Pooling Orders here would have been by trial *de novo*.  Va. Code § 45.1-361.9(A) (providing for *de novo* appeals where a gas owner or gas operator will be a party to the appeal).  *De novo* appeals are not limited by the scope of the proceeding being appealed.  *See Commonwealth v. Diaz*, 585 S.E.2d 552, 555 (Va. 2003) (noting that in a trial *de novo*, "the circuit court disregards the [prior] judgment . . . , hears the evidence anew and may consider new evidence, and makes final disposition of the case as if the case had not proceeded to [the prior] judgment").

Accordingly, the Court should dismiss Plaintiff's Complaint with prejudice under the exhaustion doctrine and allow the Pooling Orders to remain in full force and effect.  Permitting Plaintiff's Complaint to go forward would subvert the administrative hearing and appeal process the General Assembly designated for the Board and reward Plaintiff for failing to take advantage of administrative proceedings that would have disposed of claims he should have brought over a decade ago.  *See Woodford*, 548 U.S. at 90-91 (holding that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings").

### C.    Pursuant to Rule 12(b)(1) and Rule 12(b)(6), Plaintiff's Claims Challenging the Constitutionality of Compulsory Pooling Must Be

**Dismissed Because it is Well-Settled that Compulsory Pooling is Constitutional.**

Plaintiff's putative class action Complaint seeks, among other things, a

declaratory judgment that:

> The provision of § 45.1-361.22(4) of the 1990 Gas Act that sets one-eighth (1/8th) as the royalty rate for deemed leases and/or the provisions of the pooling orders issued by the Virginia Gas and Oil Board mandating a "1/8th net proceeds" royalty rate for deemed leases, are an unconstitutional taking in violation of the Fifth and Fourteenth Amendments to the United States Constitution and in violation of Article I, Section 11 of the Virginia Constitution.

(Compl. ¶ 47(e)).  Stated differently, Plaintiff is asking the Court to rule that the Pooling

Orders issued by the Board setting the royalty at 1/8th are an unconstitutional taking.

However, it is well-settled law that such Pooling Orders are constitutional under

precedent established by the United States Supreme Court.

**1.    The Virginia Gas and Oil Board has the authority to issue compulsory pooling orders.**

As a preliminary matter, it is clear that the Board has the authority to issue

compulsory pooling orders pursuant to the Act.  *See* June 24, 2010 Op. Off. Att'y Gen.

(attached as Ex. E); June 10, 2009 Op. Att'y Gen., No. 09-023, 2009 Va. AG LEXIS

27.  The "deemed leased" language referenced in Plaintiff's Complaint and contained in

the Board's Pooling Orders is mandated by the Virginia General Assembly.  *See* Va.

Code § 45.1-361-21(E) (providing that "[a]ny person who does not make an election

under the pooling order *shall be deemed to have leased* his gas or oil interest to the gas or

oil well operator as the pooling order may provide") (emphasis added).  Further, the Act

provides that "[a]ny person who does not make an election under the pooling order *shall*

*be deemed . . . to have leased* his gas or oil interest to the CBM well operator as the

pooling order may provide."  *See* Va. Code § 45.1-361.22(6) (emphasis added).  The

Board has no discretionary power to alter the legislative mandate of the General

Assembly. *See* Ex. E, June 24, 2010 Op. Off. Att'y Gen. at 1 ("Board is tasked with

approving or denying applications allowing for compulsory pooling or unitization for

unleased interests in gas well drilling units"); *see also* June 10, 2009 Op. Off. Att'y Gen.,

No. 09-023, 2009 Va. AG LEXIS 27, at 4 (noting that "the Board is authorized and, in

fact, is mandated to issue compulsory pooling orders to deem that unleased interests are

leased when gas owners fail to elect to participate in the operation of the well").

Accordingly, the Board must include the "deemed leased" language in its orders. June

10, 2009 Op. Off. Att'y Gen., No. 09-023, 2009 Va. AG LEXIS 27, at 2.

> **2.    Compulsory pooling orders issued by the Virginia Gas
> and Oil Board Are constitutional and do not constitute
> a taking.**

It is well-settled law that compulsory pooling is constitutional.  The United States

Supreme Court has affirmed the constitutional power of individual states "to regulate

production of oil and gas so as to prevent waste and to secure equitable apportionment

among landholders of the migratory gas and oil underlying their land, fairly distributing

among them the costs of production and of the apportionment."  *Hunter Co. v. McHugh*,

320 U.S. 222, 227 (1943); *see also Patterson v. Standard Oil & Gas Co.*, 305 U.S. 376

(1939) (upholding the validity of a state compulsory pooling statute).  Indeed, courts that

have considered the constitutionality of compulsory pooling statutes have routinely

upheld those laws.  *See, e.g., N. Am. Royalties, Inc. v. Corp. Comm'n of Okla.*, 683 P.2d

539 (Okla. 2984) (finding Oklahoma's forced pooling statute to be constitutional and

rejecting plaintiff's claim that its interest was taken without just compensation); *Superior

Oil Co. v. Foote*, 59 So. 2d 85, 93 (Miss. 1952).  The leading treatise on oil and gas law

notes that "[t]he constitutionality of compulsory pooling statutes has been sustained so

generally that no reasonable question on this score remains."  6 Patrick H. Martin and

Bruce M. Kramer, Williams & Meyers, *Oil and Gas Law* § 905.1 (LexisNexis Matthew

Bender 2009) (listing cases sustaining the validity of compulsory pooling statutes).

The Office of the Attorney General for the Commonwealth of Virginia has also opined that compulsory pooling is constitutional under Virginia's Constitution. In a recent opinion, former Attorney General William C. Mims not only confirms the authority of the Board to issue pooling orders, but also explicitly states that "a Board order that deems the interest of a gas owner leased to the unit operator does not constitute a taking pursuant to Article I, § 11." June 10, 2009 Op. Off. Att'y Gen., No. 09-023, 2009 Va. AG LEXIS 27, at 8. The June 24, 2010 opinion does not address constitutionality of the pooling statutes

Even if this Court were the first to consider whether compulsory pooling is constitutional, the Court would be compelled to find it constitutional under existing takings jurisprudence. The Fifth Amendment of the United States Constitution, which is applied to the states through the Fourteenth Amendment, provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V, XIV; see also *Keystone Bitumimous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 481 n.10 (1987). However, "[a]ll citizens hold property subject to the proper exercise of the police power for the common good." *Commonwealth v. County Utilities Corp.*, 290 S.E.2d 867, 872 (Va. 1982). Valid exercises of police power are not "takings" within the meaning of the federal or state constitutions. See *Miller v. Schoene*, 276 U.S. 272, 279-80 (1982); *Bowman v. Va. State Entomologist*, 105 S.E. 141, 145 ( Va. 1920). The United States Supreme Court has held that a compensable taking exists when state regulations compel property owners "to suffer a physical 'invasion' of [their] property" or when regulatory action "denies all economically beneficial or productive use of land." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992). The Virginia Supreme Court has followed

28

the United States Supreme Court's lead in this regard.  See *Va. Beach v. Bell*, 498 S.E.2d 414, 416-17 (Va. 1998).  The compulsory pooling orders do not involve a permanent physical invasion of an owner's property or any action that would deny all other economically beneficial or productive use of the property included in the unit.  *See* June 10, 2009 Op. Off. Att'y Gen., No. 09-023, 2009 Va. AG LEXIS 27, at 7.  Accordingly, there is no taking or damage to private property for public use.  *Id.*  Under this analysis, there can be no taking.

### 3.    The 1/8[th] interest royalty provision is constitutional.

Just as compulsory pooling cannot be considered a taking under well-settled law governing takings claims based upon the analysis set forth above, the one-eighth (1/8[th]) royalty rate for deemed leases also cannot be a taking.  This is clear under *Lucas* and its progeny because, by definition, where a landowner receives a royalty, he has not been "den[ied] all economically beneficial or productive use of land."  *Lucas,* at 1015.

### D.    Plaintiff's Complaint Must Be Dismissed Because He Failed to Join Indispensible Parties.

Plaintiff's Complaint is subject to dismissal under Rule 12(b)(7) because he has failed to name necessary and indispensable parties as defendants to this lawsuit.  A party is "necessary" under Rule 19(a)(1) if:

(1)    in the person's absence complete relief cannot be accorded among those already parties; or

(2)    the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the persons absence may (i) as a practical matter impair or impede the persons ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Whether a party is "indispensable" under Rule 19(b) is determined by a consideration of four factors:

> (1)    the extent to which a judgment rendered in the persons absence might prejudice that person or the existing parties;

> (2)    the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief; or other measures;

> (3)    whether a judgment rendered in the persons absence would be adequate; and

> (4)    whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Here, Plaintiff's claims challenge both the constitutionality of the legislation and regulation authorizing the Pooling Orders at issue, and makes claims against the gas operator operating the wells pursuant to those Pooling Orders.  Any judgment against the current named Defendants, neither of which is even operating the subject wells, would not provide Plaintiff with the relief he seeks and would severely prejudice the interests of proper parties not currently before the Court.  In addition to the gas operator, the Commonwealth of Virginia and conflicting claimants (e.g. Commonwealth Coal Corporation) would be indispensable parties.[12] The Commonwealth of Virginia has an interest in - and has asserted such interest through the opinions of its Attorneys General - the continued validity and enforcement of the Virginia Gas and Oil Act , the Board constituted and operating under that Act, and the lawful and existing Orders of that Board duly issued pursuant to the authority conferred upon it by the Act.  Commonwealth Coal Corporation, as a conflicting CBM claimant and lessor of CBM rights to CNX Gas Company LLC, has a documented and asserted interest in the CBM at issue in this suit.

---

[12] A party that files a pleading drawing into question the constitutionality of a state statute must promptly file a notice of constitutional question stating the question if a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity.  The filing party must serve the notice on the state attorney general.  *See* Fed. R. Civ. P. 5.1.

Accordingly, Plaintiff having failed to name these and other necessary and indispensable

parties in this suit, ostensibly because at least the naming of the latter may destroy

diversity jurisdiction, the Complaint should be dismissed under Rule 12(b)(7). *See*

*Yashenko v. Harrahs NC Casino Co., LLC*, 446 F.3d 541, 552-53 (4th Cir. 2006).

     **E.**     **Pursuant to Rule 12(b)(6), Plaintiff's Count I (Declaratory Judgment) and Count II (Trespass and Conversion) Must be Dismissed Under the Doctrine of Laches and Under the Statute of Limitations.**

          **1.**     **Plaintiff's Declaratory Judgment claim is barred by the doctrine of laches.**

"The doctrine of laches involves the failure of a party to assert a known right or

claim for an unexplained period of time resulting in prejudice to the adverse party." *1924*

*Leonard Rd., L.L.C. v. Van Roekel*, 636 S.E.2d 378, 387 ( Va. 2006).  Without question,

Plaintiff failed to assert his rights for an unexplained period of time.  It is also without

question that Plaintiff's failure to assert his rights for so long has resulted in prejudice to

the Defendants should that right be allowed to be asserted now.

    Plaintiff has known and been aware of his rights for years.  *See e.g.* The Orders

pooling Plaintiff's alleged CBM interests became effective on May 26, 1998 (Unit

AA38), more than twelve years ago, October 2, 2001 (Unit BB39), more than eight-and-

a-half years ago and November 8, 2001 (Unit BB38), also more than eight-and-a-half

years ago.  Plaintiff had actual and constructive notice of the Orders because true and

correct copies of the Orders were mailed to Plaintiff by PGP and filed with the proper

County Clerk.  Moreover, the Plaintiff appeared and was head at the hearings on which

the Orders were based.  Plaintiff cannot and does not explain why he has waited until

now to bring his claims.

Plaintiff's unexplained failure to bring his claims until now, a delay in some

instances of more than a decade, unquestionably will result in prejudice to the Unit

Operators.  The first gas well to produce gas from the subject property began producing no later than August, 1998.[13]  Gas has been produced from the subject property since that time pursuant to the Pooling Orders.  PGP and its successors-in-interest have spent hundreds of thousands of dollars establishing and drilling gas wells to produce CBM from the subject property as required by the Pooling Orders (Pooling Orders ¶ 9.1), but only now does Plaintiff claim that the Orders are unconstitutional, that only he has the right to produce the CBM in question, and that Defendants are guilty of trespass and conversion.  Further, after the wells have been drilled and have been producing CBM for years, Plaintiff only now asks this Court to order Defendants to account to Plaintiff on an 8/8ths basis and to disgorge all the money Defendants made from operating the gas wells.  In short, although Plaintiff alleges that only he has the right to produce the CBM in question, he simply sat on his hands and allowed PGP and its successors-in-interest to do all the work, take all the risk and produce and market all the gas, and now he asks this Court to make Defendants pay him all the money that has been earned solely because of the efforts of the Unit Operators.  Plaintiff had the opportunity to elect among several available options for a greater participating right in the gas wells at the time the Pooling Orders were entered and declined to do so.  Allowing Plaintiff the opportunity simply to wait and see whether the wells would be profitable, and then step in and assert a claim to the resulting profits is not only prejudicial, it is unconscionable.

Here, Order AA38 became effective on May 26, 1998; Order BB39 became effective on October 2, 2001; and Order BB38 became effective on November 8, 2001.  Plaintiff did not file his Complaint until June 15, 2010; more than eight-and-a-half years after the date when the last order pooling his CBM interest (if any), Order BB38, became

---

[13] The Virginia Department of Mines, Minerals and Energy make monthly gas production by well available online at www.dmme.virginia.gov/dgoinquiry/frmMain.aspx?ctl=57.

effective. *See* Ex. A, AA38 Order ¶ 22; Ex. B, BB39 Order ¶ 22; Ex. C, BB38 Order ¶ 22. Until now, Plaintiff decided to sit on his right to appeal the Orders even though under the Act Plaintiff had an immediate right to appeal. *See* Va. Code § 45.1-361.9 ("Any order or decision of the Board may be appealed to the appropriate circuit court.") Because the Orders all became effective more than eight years ago, Plaintiff's claims related to the legality or constitutionality of the Orders and to Defendants' alleged conduct related thereto are barred by the doctrine of laches.

> **2.    Plaintiff's trespass and conversion claims also are barred, in whole or in part, by the relevant statute of limitations for injury to property.**

Plaintiff's trespass and conversion claims also are barred by the five-year statute of limitations related to injury to property. *See* Va. Code § 8.01-243(B) (every action for injury to property must be brought within five years of the date when the cause of action accrues); *Vines v. Branch*, 418 S.E.2d 890, 894 (Va. 1992) (holding that the five-year limitation period of Va. Code § 8.01-243(B) is applicable to injury to property). Here, any alleged trespass would have accrued at the latest when the gas wells drilled pursuant to the Orders went online and actually began producing CBM from the subject property. Well AA38B first began producing CBM from Unit AA-38 no later than August, 1998 and Well BB39 first began producing CBM from Unit BB-39 no later than December, 2001. Thus, Plaintiff's trespass and conversion claims related to Units AA-38 and BB-39 are barred by Va. Code § 8.01-243(B).[14] No wells have ever been drilled in Unit BB-38, the only other Unit where Plaintiff's alleged interest in the CBM has been pooled. Accordingly, Count II of Plaintiff's Complaint must be dismissed with prejudice.

---

[14] Well BB39C has not begun producing CBM, so Plaintiff has no trespass or conversion claim related to this well.

**F.    Plaintiff's Claims for Declaratory Relief and for Trespass and Conversion Must be Dismissed, in Whole or in Part, Because the *Harrison-Wyatt* Decision and the Recent Revisions to the Act do not Establish that Plaintiff Owns the CBM in Question.**

Under the Act, even if Plaintiff joins the correct parties and then actually proves his ownership of the CBM before a court of competent jurisdiction or an arbitrator, the CBM remains pooled, and thus deemed leased, under the Orders pursuant to Va. Code § 45.1-361.21.  The statute provides, in relevant part, that:

> The Board, *upon application from any gas or oil owner*, shall enter an order pooling all interests in the drilling unit for the development and operation thereof when: . . . (2) There are separately owned interests in all or part of any such drilling unit and those having interests have not agreed to pool their interests.

Va. Code § 45.1-361.21(A)(2) (emphasis added).  The statute further provides that "[a]ny person who does not make an election under the pooling order shall be deemed to have leased his gas or oil interest to the gas or well operator as the pooling order may provide." Va. Code § 45.1-361.21(E).  Here, all of Plaintiff's right, title and interest in and to the CBM in question was pooled pursuant to Va. Code § 45.1-361.22 and the "applicable portions of Va. Code § 45.1-361.21."  *See* Ex. A, AA38 Order ¶ 6; Ex. B, BB39 Order ¶ 6; Ex. C, BB38 Order ¶ 6.

The Act defines an oil and gas owner as "any person who owns, leases, has an interest in, or who has the right to explore for, drill, or operate a gas or oil well as principal or lessee."  Va. Code § 45.1-361.1.  The Orders show that PGP does in fact have CBM lease rights from a fee and/or CBM owner in each of the subject drilling units and not just a coal owner.  *See* Ex. A, AA38 Order, Book 476, Pages 826-27; Ex. B, BB39 Order, Book 534, Page 310; Ex. C, BB38 Order, Book 534, Pages 256-57.  Accordingly, PGP (or its successor-in-interest), as the designated Unit Operator, is a holder of valid CBM interests in each of the drilling units in question and entitled to pool

Plaintiff's interest in and to the CBM in the relevant drilling units under Va. Code § 45.1-361.21 and § 45.1-361.22.  Further, Plaintiff failed to make an election under the Orders, so Plaintiff's interest in the CBM also is deemed leased pursuant to Va. Code § 45.1-361.21(E).[15]  Even if either of the Defendants was the Unit Operator (which they are not) it would have a statutory basis for pooling and producing Plaintiff's CBM interests, if any, in and to the subject drilling units that is separate and distinct from Va. Code § 361.22(6), Plaintiff therefore cannot maintain subparts (a) or (b) of his declaratory judgment claim (Compl. ¶ 47(a)-(b)) or his claim for trespass and conversion.

Additionally, Plaintiff's reliance upon the Supreme Court of Virginia's decision in *Harrison-Wyatt, LLC v. Ratliff*, 593 S.E.2d 234 (Va. 2004) to prove his ownership of the CBM in question is misplaced.  In interpreting the intent of the parties as to an 1883 severance deed that conveyed coal only, the Virginia Supreme Court in *Harrison-Wyatt* held that "[t]he grant of coal rights does not include rights to CBM absent an express grant of coalbed methane, natural gases, or minerals in general."  *Id.* at 236.  *Harrison-Wyatt* did not, however, determine CBM ownership as between surface, oil and gas, and other mineral owners or even a coal owner to the extent that the severance deed conveyed any rights in addition to the coal.  Plaintiff's own Complaint acknowledges that the *Harrison-Wyatt* decision is limited in this manner:  "A new state law codifies the *Harrison-Wyatt* rule.  Va. Code § 45.1-361.21.1: 'A conveyance, reservation, or exception of coal shall not be deemed to include CBM.'"  (Compl. ¶ 2).  Thus, any legal determination of whether the surface owners, the oil and gas owners or the mineral owners did in fact retain or are the current owners of the CBM depends upon a case-by-

---

[15] Plaintiff admits that his alleged interest in the CBM was "deemed" leased pursuant to Va. Code § 361.22(6).  (Compl. ¶¶ 27-28).  To have his/her interest "deemed" leased under Va. Code § 361.22(6), a person must fail to make an election under the relevant pooling order.  Va. Code § 361.22(6).  Thus, by admitting that his alleged interest was "deemed" leased, Plaintiff admits that he failed to make an election under the relevant pooling order.

case examination of title to that CBM.

To make such a determination, all of the conflicting claimants must be brought before a court of competent jurisdiction or an arbitrator. The court or arbitrator must examine all relevant deeds and leases to determine whether only coal has been severed from the surface, oil and gas, and/or other mineral estate, as well as whether the surface, oil and gas, and/or other mineral owner has not otherwise severed the oil, gas and/or mineral estate, which would require a further adjudication of CBM rights as between those owners.

The *Harrison-Wyatt* decision is undoubtedly a "final legal determination of ownership" only as between the parties to that case, namely, Harrison-Wyatt, LLC and Donald Ratliff and others, regarding three coal severance deeds concerning CBM located in Buchanan County, Virginia. 593 S.E.2d at 235. Plaintiff and the putative class members, however, cannot simply rely on *Harrison-Wyatt* to prove ownership of the CBM gas in which they claim interests, where numerous other holders of surface, oil, gas and/or other mineral interests possess equally viable claims to the same CBM following the *Harrison-Wyatt* decision. Neither Plaintiff and the putative class members, nor Defendants CNX Gas Corporation and CONSOL Energy Inc., were parties to that lawsuit.

Furthermore, Plaintiff is wrong to assert that if a court determines he owns the CBM in question, then the CBM will no longer be pooled under the relevant Pooling Orders. (Compl. ¶¶ 29-30). The CBM in these three units has been pooled for development by the Unit Operator. A final determination of a title to the CBM does not un-pool the unit. The purpose of the language in Va. Code § 361.22(6) referring to "a final legal determination of ownership" is to codify the common-sense principle that if a

court determines that any conflicting claimant is later determined to be not the owner of
the CBM in question, then he is no longer deemed to have leased the CBM to the Unit
Operator and has no potential claim to escrowed funds.  However, if Plaintiff is
determined to be the owner of the CBM in question, then Plaintiff's CBM will remain
pooled and "deemed" leased under the Pooling Orders pursuant to Va. Code § 8.01-
361.21, and he will be entitled to recover his share of the royalty, both from that already
escrowed and going forward, while the Unit Operator identified in the Pooling Orders
will continue to have the right to produce the CBM in question.

    **G.**    **Pursuant to Rule 12(b)(6), Plaintiff Has Failed to Adequately Allege a
Claim for Trespass, Conversion, Breach of Implied Duties, Breach of
Fiduciary Duties or an Independent Claim for Punitive Damages.**

        **1.**    **Plaintiff's trespass claim must be dismissed because
plaintiff cannot show that defendants' actions are
unauthorized or that Plaintiff has exclusive possession
to the property in question.**

To recover for trespass, the Plaintiff must allege and show "'an unauthorized
entry onto property which results in interference with the property owner's possessory
interest therein'" and that the invasion "interfered with the [Plaintiff's] right of exclusive
possession of the land." *Cooper v. Horn*, 448 S.E.2d 403, 407 (Va. 1994) (citation
omitted).  In his Complaint, Plaintiff does not allege that Defendants have entered onto
the surface of his property and placed a well thereon without authorization    (Compl. ¶
27).  Therefore, Plaintiff has failed to state a claim for trespass to any surface estate that
he may own.

As to the gas estate, Plaintiff makes clear from the allegations set forth in the
Complaint that the operation of any gas wells for the production of the CBM in question
was authorized by the Pooling Orders.  (Compl. ¶ 27).  The Pooling Orders provide that
"[p]ursuant to Va. Code § 45.1-361.21.c.3, Pocahontas Gas Partnership [not the

Defendants] . . . is designated as the Unit Operator authorized to drill and operate the Coalbed Methane Gas well(s) in the Subject Drilling Unit." Ex. A, AA38 Order ¶¶ 7, 13 22; Ex. B, BB39 Order ¶¶ 7, 13; Ex. C, BB38 Order ¶¶ 7, 13. Indeed, Defendants have never produced any gas directly from Plaintiff's property. *See* Ex. D, CONSOL & CNX Decl. ¶ 17. The language of the Pooling Orders makes impossible any claim of trespass against PGP and its successors-in-interest (or against Defendants were they the designated unit operator) related to the operation of the relevant gas wells, because the Pooling Orders do in fact authorize PGP and its successors to operate the wells and to produce the CBM from the subject property within the relevant drilling units, which encompass Plaintiff's alleged property interests. Further, because Plaintiff failed to make an election pursuant to the Pooling Orders, Plaintiff's "right, interests, and claims in and to the [g]as" have been deemed leased to PGP. Ex. A, AA38 Order ¶ 10; Ex. B, BB39 Order ¶ 10; Ex. C, BB38 Order ¶ 10. While this "deemed" lease is subject to "a final legal determination of ownership," no such legal determination as between and among the Plaintiff and the conflicting claimants, Commonwealth Coal Corporation and Robert Rose *et ux.*, has occurred. *See id.*; *see also* Ex. A, AA38 Order, Book 476, Page 829; Ex. B, BB39 Order Book 534, Page 312; Ex. C, BB38 Order, Book 534, Pages 264-70. Accordingly, Plaintiff's trespass claim must be dismissed because he does not have exclusive possession of the gas and because the gas well(s) in question are in fact authorized.

>    **2.    Plaintiff's conversion claim must be dismissed because Plaintiff cannot and has not alleged an immediate right to possess the CBM.**

To recover for conversion, a plaintiff must allege and show "the wrongful assumption or exercise of the right of ownership over goods or chattels belonging to

another in denial of or inconsistent with the owner's rights" and that Plaintiff is "the person having a property interest in and entitled to the immediate possession of the item alleged to have been wrongfully converted." *Economopoulos v. Kolaitis*, 528 S.E.2d 714, 719 (Va. 2000). Plaintiff has failed to meet this initial burden in pleading his claim, because Plaintiff cannot contend that he has the immediate and exclusive interest in and right to possess the CBM. As Plaintiff makes clear in his Complaint, the Orders have granted the right to produce, (i.e., possess) the CBM in question to the Unit Operator — PGP. (Compl. ¶ 27). Likewise, Plaintiff admits that "Plaintiff and the Class Members . . . were 'deemed' to have leased their CBM interests in the units to CNX."[16] (Compl. ¶ 27). Accordingly, the Unit Operator designated in the Pooling Orders — not Plaintiff — possesses the interest in the CBM which entitles it to take immediate possession of the CBM. Because any conversion would have been carried out pursuant to the Pooling Orders, the alleged conversion of Plaintiff's CBM was not wrongful or in denial of Plaintiff's rights but was in fact authorized under Virginia law.

> **3.    Plaintiff has failed to adequately allege claims for breach of implied and fiduciary duties.**

> **a.    The duties owed by a unit operator to a deemed lessor are limited by the Act.**

The duties owed by a Unit Operator to a deemed lessor are limited by the Virginia Gas and Oil Act. The Act provides that "[a]ny person who does not make an election under [a] pooling order shall be deemed, subject to a final legal determination of ownership, to have leased his gas or oil interest to the coalbed methane gas well operator *as the pooling order may provide*." Va. Code § 45.1-361.22 (6) (emphasis added). When a statute is clear and unambiguous, a court "looks no further than the plain meaning of the statute's words." *Gray v. Rhoads*, 597 S.E.2d 93, 96 (Va. 2004). Thus, the rights,

---

[16] Plaintiff's CBM interests were not "deemed" leased to CNX but were in fact "deemed" leased to PGP.

duties and obligations as between any person who does not make an election and the CBM well operator are limited by statute to those rights, duties and obligations expressly stated in the relevant Pooling Orders.

Plaintiff admits that he did not make an election under the Pooling Orders and has been deemed leased pursuant to Va. Code § 45.1-361.22(6). (Compl. ¶¶ 27-28). Accordingly, all rights, duties and obligations as between Plaintiff and the Unit Operator are contained within the four corners of the relevant pooling orders. Because the Pooling Orders establish all the rights, duties and obligations as between Plaintiff and the Unit Operator, Plaintiff's only claim against Defendants (were Defendants the Unit Operator) would be for breach of those duties and obligations clearly expressed in the Pooling Orders. Thus, Plaintiff improperly has alleged that Defendants somehow have breached additional, non-existent implied duties to Plaintiff not clearly expressed in the Orders.

Similarly, even if Defendants were the Unit Operator (which they are not), any "fiduciary" duty owed by the Unit Operator to Plaintiffs would have to be clearly delineated in the Pooling Orders. In fact, the Orders require the Unit Operator to deposit all royalties into the escrow account "by use of a report format approved by the Inspector." Ex. A, AA38 Order ¶ 16.2; Ex. B, BB39 Order ¶ 16.2; Ex. C, BB38 Order ¶ 16.2. The Pooling Orders further provide that "[t]he Director shall provide all persons not subject to a lease with reasonable access to all records for Subject Drilling Unit which are submitted by the Unit Operator to said Director and/or his Inspector(s)." Ex. A, AA38 Order ¶ 19; Ex. B, BB39 Order ¶ 19; Ex. C, BB38 Order ¶ 19. Plaintiff thus may request these records from the Director — not the Unit Operator, and certainly not Defendants — as required by the Pooling Orders. Thus, Plaintiff improperly has alleged

that Defendants somehow have breached additional, non-existent fiduciary duties which are owed to them but not provided for in the Pooling Orders.

> **b.** **There is no fiduciary duty owed by a lessee to a lessor and Virginia does not recognize a cause of action for breach of implied duty.**

Even if the Act did not govern, the principle that no fiduciary duty is owed by a lessee to a lessor under an oil and gas lease is well established in oil and gas jurisprudence:

> Generally, the parties to a gas and oil lease deal with each other at arm's length. A lessee under an oil and gas lease is not a fiduciary to his lessor; his duty is to act honestly and fairly under a contractual relationship. Thus, no cause of action for a breach of the duty of good faith and fair dealing exists in the ordinary relationship between an oil and gas lessor and lessee; absent a "special relationship" created by the parties, the relationship is purely contractual.

38 Am. Jur. 2d Gas and Oil § 68; *see also Stinnett v. Colo. Interstate Gas Co.*, 227 F.3d 247, 254 (5th Cir. 2000) (noting that Texas law has never recognized a fiduciary relationship between a lessee and royalty owners); *Musser Davis Land Co. v. Union Pac. Res.*, 201 F.3d 561, 564 (5th Cir. 2000) (noting under Louisiana law that "[a] mineral lessee is not under a fiduciary obligation to his lessor"); *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996) (noting that Illinois has expressly declined to make the oil and gas lessee a fiduciary of the lessor); *Murphy v. Amoco Prod. Co.*, 590 F. Supp. 455, 464 (D.N.D. 1984) (a lessee is not a fiduciary and standards applied to fiduciaries are entirely too strict); *Waechter v. Amoco Prod. Co.*, 537 P.2d 228, 248 (Kan. 1975) (observing that there is no precedent indicating that an oil and gas lessee should be declared a fiduciary and that it is well established that a lessee under an oil and gas lease is not a fiduciary to his lessor); *Bunger v. Rogers*, 112 P.2d 361, 363 (Okla. 1941) ("defendants were merely lessees under an oil and gas mining lease and were under no obligation to the plaintiff, other than to pay the rent and royalty provided in said lease,

and if they breached this duty then their liability was purely a contractual one and in no sense fiduciary").  Thus, even in the absence of the provisions of the Act and the Orders, Defendants would owe no fiduciary duties to Plaintiff.

Moreover, no Virginia court has held that oil and gas leases contain implied duties. Indeed, there is no cause of action for breach of an implied duty in Virginia.  *See Charles E. Brauer Co., Inc. v. NationsBank of Va., N.A.*, 466 S.E.2d 382, 385 (1996). Breach of implied duty is part of breach of contract, and Virginia courts routinely dismiss separate counts alleging breach of an implied duty.  *See, e.g.*, *id; see also Allaun v. Scott*, 59 Va. Cir. 461, 465 (2002) (sustaining dismissal breach of duty of good faith and fair dealing because there is no such independent cause of action); *Wright v. St. Charles Water Auth.*, 59 Va. Cir. 244, 246 (2002); *United Leasing Corp. v. Res. Bank*, 58 Va. Cir. 96, 103 (2001).

> **4.**     **Plaintiff's claim for punitive damages must be dismissed.**
>
> **a.**     **Plaintiff's claim for punitive damages must be dismissed because there is no independent cause of action for punitive damages recognized in Virginia.**

There is no stand-alone cause of action under Virginia law for punitive damages. *RMA Lumber, Inc. v. Pioneer Mach., LLC*, 2008 WL 4693564, at *9 (W.D. Va. Oct. 24, 2008).   Rather, punitive damages are awarded as a mere incident of the cause of action in which they are sought.  *Baker v. Marcus*, 114 S.E.2d 617, 620-21 (Va. 1960) (distinguishing the purpose of compensatory and exemplary/punitive damages, and describing punitive damages as something in addition to compensation given as a punishment to the defendant to deter him and others from committing similar offenses). Thus, Plaintiff cannot bring an independent claim for punitive damages.

### b.    Plaintiff has failed to plead allegations of actual malice to support a claim for punitive damages.

The essential element of a claim for punitive damages under Virginia law is actual malice.  Actual malice is defined under Virginia law as an act done willfully or wantonly or with reckless disregard toward the rights of another.    *PGI, Inc. v. Rathe Prods., Inc.*, 576 S.E.2d 438, 444 (Va. 2003) (holding that punitive damages are permitted only where there is misconduct or malice, or when the defendant is so reckless or negligent to show a conscious disregard of the rights of others).  It is impossible that any alleged conduct on the part of the Defendants in applying for or pooling Plaintiff's alleged CBM interests, or in drilling wells and producing CBM from the subject property, was willful or wanton or done with reckless disregard of the Plaintiff's rights, in light of the three Pooling Orders. Because Plaintiffs have failed to adequately plead any willful or wanton conduct on the part of Defendants, or any acts done with reckless disregard toward the rights of Plaintiffs, any award of punitive damages would be inappropriate.

Furthermore, the Virginia Code limits any award of punitive damages to $350,000, even if a jury awards a higher amount, for actions accruing after July 1988. *See* Va. Code § 8.01-38.1  ("In any action accruing on or after July 1, 1988 . . . the total amount awarded for punitive damages against all defendants found to be liable shall be determined by the trier of fact.  In no event shall the total amount awarded for punitive damages exceed $350,000.")  The statute is clear and unambiguous.  As the United States Court of Appeals for the Fourth Circuit has explained, "[t]he drafters of the Virginia statute, in limiting punitive damages, chose the phrase 'any action' to define the class of cases to which the statute would apply—they did not further define 'any action.'  In our view, the term is unequivocal." *Wackenhut Applied Techs. Ctr., Inc. v. Sygnetron Prot. Sys., Inc.*, 979 F.2d 980, 984 (4th Cir. 1992) (holding that Va. Code § 8.01-38.1 applies to

43

any action and is not limited to unintentional torts).

IV.    **CONCLUSION**

WHEREFORE, CNX Gas Corporation and CONSOL Energy Inc., by its

undersigned counsel, respectfully request that this Court grant its Motion to Dismiss,

dismiss this case with prejudice, award them costs and any such further relief this Court

deems just and necessary.

Respectfully submitted,
CNX GAS CORPORATION and
CONSOL ENERGY INC.

By Counsel

_____/s/ Jonathan T. Blank_____
Jonathan T. Blank (VSB No. 38487)
Jonathan Chiu (VSB No. 72824)
Kurt A. Friesen (VSB No. 77636)
McGuireWoods LLP
310 Fourth Street, N.E., Suite 300
P.O. Box 1288
Charlottesville, Virginia 22902
(434) 980-2230 – Telephone
(434) 980-2269 – Facsimile
jblank@mcguirewoods.com
jchiu@mcguirewoods.com
kfriesen@mcguirewoods.com


James R. Creekmore (VSB No. 36246)
Brian S. Wheeler (VSB No. 74248)
Keith Finch (VSB No. 37599)
The Creekmore Law Firm PC
106 Faculty Street
Blacksburg, Virginia 24060
(540) 443-9350 – Telephone
(540) 443-9350 – Facsimile
james@creekmorelaw.com
brian@creekmorelaw.com
keith@creekmorelaw.com


*Counsel for CNX Gas Corporation and
CONSOL Energy Inc.*

44

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2010, I presented the foregoing to the Clerk of Court for filing and uploading to the CM/ECF System, which will send notification of such filing to the following:

Peter G. Glubiak, Esquire
GLUBIAK LAW OFFICE
11165 West River Road
P.O. Box 144
Aylett, VA
(804) 769-1616 – Telephone
(804) 769-1987 – Facsimile
glubiaklaw@aol.com

I further certify that on July 7, 2010 that the foregoing was E-mailed and mailed to the following:

Larry D. Moffett, Esquire
DANIEL COKER HORTON & BELL, P.A.
265 North Lamar Blvd., Suite R
P. O. Box 1396
Oxford, MS 38655
(662) 232-8979 – Telephone
(662) 232-8940 – Facsimile
lmoffett@danielcoker.com

Don Barrett, Esquire
Brian Herrington, Esquire
DON BARRETT, P.A.
404 Court Square North
P. O. Drawer 987
Lexington, MS 39095
(662) 834-2376 – Telephone
(662) 834-2628 – Facsimile
dbarrett@barrettlawoffice.com

David S. Stellings, Esquire
Jennifer Gross, Esquire
LIEFF, CABRASER, HEIMANN
 & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
(212) 355-9500 – Telephone
(212) 355-9592 – Facsimile
dstellings@lchb.com

Charles F. Barrett
BARRETT & ASSOCIATES, P.A.
6518 Hwy. 100, Suite 210
Nashville, TN 37205
(615) 515-3393 – Telephone
(615) 515-3395 – Facsimile
cb@barrettantassociates.net

    /s/  Jonathan T. Blank
Jonathan T. Blank (VSB No. 38487)
MCGUIREWOODS LLP
310 Fourth Street, N.E., Suite 300
P.O. Box 1288
Charlottesville, Virginia 22902
(434) 980-2230 – Telephone
(434) 980-2269 – Facsimile
jblank@mcguirewoods.com

\12342216.19

45